The Chancellor.
The bill is filed to foreclose a mortgage given by John B. Conover, bearing date on the 7th of July, 1856, to secure the payment of a debt due upon a bond of even date, given by Conover to the complainants, with the following conditions, viz. that the said Conover should pay unto the complainants the interest on the principal sum of $2000, together with the regular monthly instalments of one dollar on each and every share of the capital stock of the said association then owned by Conover, on the first Monday in each and every month thereafter, the said interest at the rate of one half of one per cent, monthly and every month thereafter until the said principal sum of $2000 shall be paid; and in case the said John B. Conover shall neglect to pay the said regular monthly instalments of one dollar on each and every share of stock aforesaid for the space of six calendar months, or in case of six months’ interest, or that amount of interest at the rate aforesaid on the said principal sum of $2000 shall be at any time in arrears and unpaid, if the said John B. Conover shall immediately pay to the complainants the whole of the said principal sum of $2000, with lawful interest thereon as aforesaid, then the said bond or obligation shall bo void.
At the time of the execution of said bond and mortgage Conover owned and held ten shares of the capital stock of the association, and as was required by the constitution of *222 the association of which he was then a member, he assigned the said ten shares of stock to the association, as collateral and additional security to the mortgage for the payment of the money secured thereby; but the complainants, by their bill, insist that no part of the stock could lawfully be used and appropriated upon a default of performing the condition of the mortgage until the security of the mortgage was exhausted by foreclosure and sale of the mortgaged premises.
On the thirtieth of March, 1860, Conover mortgaged the same premises, with other lands, to John B. Herbert, to secure a debt of $4000; and on the tenth of September, 1860, Conover, being in failing circumstances, conveyed the mortgaged premises in fee, with other lands, to Herbert, and the residue of his real estate to other parties.
Subsequent to the mortgage and conveyance to Herbert, judgments at law were recovered against Conover, and executions issued thereon were levied upon the said ten shares of stock owned by him in the association.
Conover, it is admitted, is insolvent and unable to pay his •debts.
Two issues are made by the bill and answer, viz.
1. What amount, if anything, are the complainants entitled to recover upon the mortgage.
2. May the second mortgagee of the real estate have the assets marshalled by compelling the association to apply the stock owned by Conover to the payment of their debt before resorting to their mortgage upon the real estate.
The complainants were incorporated under the provisions of the act entitled, “ An act to encourage the establishment of mutual building and loan associations.” Nix. Dig. 84.
They are invested with all the rights, privileges, and im■munities that are given to associations organized under the provisions of that act.
It is not alleged that the loan from the association to Con-over was not in accordance with the constitution of the association. It is alleged, in the answer, that the defendant received but $1800 for his loan .of $2000. But it appears, *223 by the evidence, that the loan was sold to the highest bidder, and that Conover became the purchaser at a premium of ten per cent. The constitution of the association provides that the loans shall be disposed of to the highest bidder, and that when a stockholder is declared to be entitled to a loan or loans he shall pay, or allow to be deducted, the premium offered by him for the same; and he shall secure the payment of the loan to the association by a mortgage for the full amount of the sum loaned, and for every loan of $200 made to a stockholder, at least one share of stock shall be assigned as a collateral security. Art. 9, § 3.
Herbert, by his answer, claims that the complainants cannot recover the full amount due upon the mortgage according to its terms, but that Conover is entitled to a deduction of all the moneys paid by him to the association, and is liable only for the balance. The claim indeed, as set forth in the answer, goes much further. It is insisted that he is entitled to an account, under the direction of the court, of the amount due from Conover to the complainants, and that in taking the account Conover should be allowed for all moneys paid by him to the association and for the actual value of the ton shares of stock, and that only the difference between the amount thus ascertained and the amount loaned and advanced by the complainants to Conover, with lawful interest, shall be decreed to be the amount due to the complainants.
The claim thus presented is, that a member of the association who has been favored with a loan to the full amount allowed by the constitution upon each share of his stock, shall have the premiums which he engaged to pay for the loans and the fines incurred for his defaults, as well as the monthly instalments which ho has paid agreeably to the constitution of the association, restored to him with interest, and at the same time that he shall have the benefit of the advanced value of the stock, derived from the fact that these premiums, fines, and monthly instalments have been paid by all his fellow members. The claim has no foundation in law, *224 reason, or equity. The claim in its modified form, in which it is often urged on behalf of members of similar associations, is that the claimant is entitled to have deducted from the amount of the mortgage the premiums that he has paid on account, and to this extent the claim would, at first view, seem to be equitable and just. The member has taken a loan of $200. He is to repay it by monthly instalments. He is to have, moreover, the benefit of all premiums, fines, and advanced rates of interest paid by himself and all his associate members. It is very natural, therefore, for the member to suppose that, when he has paid $100 in monthly instalments, no more than the balance of $100 can remain due on the mortgage. But he forgets that the payments are made not upon his mortgage debt, but go into a general fund, the benefits of which are to be shared by every member of the association. And while he may reap great profits from premiums, fines, and high rates of interest, he incurs the hazards of losses from dishonest officers, defaulting members, and ill secured loans, so that he may actually repay the whole amount loaned, with a high rate of interest, and yet be a debtor to the association. The debt is in fact never discharged until it is either actually paid according to the terms of the mortgage or until the accumulation shall be sufficient to redeem every mortgage given by a shareholder, and cancel every share of members who have taken no loan at its par value. The undertaking of the member to repay the loan is absolute, and he must perform his engagement. He can only redeem his mortgage by paying its full amount. He can have no credit for the value of his shares until the scheme closes, and there are funds sufficient to divide the full amount of the shares among all the shareholders according to terms of the scheme.
This question arising upon a scheme of a somewhat different character from the present, was very fully discussed by counsel, and decided by this court, in the case of The Hoboken Building Association v. Martin, at October term, 1861.
The principle will be found stated in Mosely v. Baker, 6 *225 Hare 87; Farmer v. Smith, 4 Hurls. & Nor. 196, and in Seagrave v. Pope, 1 Degex Mac. & Gor. 783.
The same principle, as applied to decrees of foreclosure, was adopted by the master, and sanctioned by the Chancellor, in Van Vorst v. Horsley, to be found in Book E. 4 of Enrolled Decrees 626. It was also recognised and approved by the Chancellor in Savings Association v. Vanderveer, 3 Stock. 387.
The simple principle recognised in the cases, and constantly acted upon is, that if by the default of a member of the association his mortgage is forfeited, he must pay the mortgage debt as any other obligor not a member must do. The benefit of his membership he receives in the value of his shares when the scheme is accomplished.
The complainants are entitled to recover the principal of the bond, $2000, being the amount loaned, with the arrears of interest due thereon.
II. The defendant, Herbert, is a second mortgagee, and is also the owner in lee of the equity of redemption of the promises included in the complainants’ mortgage. He insists that, as the complainants hold two securities for their debt, to wit, the mortgage and the ten shares of stock owned by Conover, and assigned as collateral for the mortgage debt, he is entitled to have the assets marshalled, and to have the shares of stock first applied toward the liquidation of the debt in aid of his claim. The principle is a familiar one, constantly recognised and acted upon in courts of equity. But it will never be applied where it is injurious to a third party over whom the party claiming the benefit of the principle has no superior equity. This modification of the principle was recognised and applied by Chancellor Williamson in the case of Reilly v. Mayer, 1 Beasley 55. In that case, as in this, the loan association held a mortgage for $1000; and as additional and collateral security for the same debt, they held five shares of the capital stock of the association, assigned to them by one of the shareholders. A second mort *226 gagee claimed to have the shares of stock, which had been transferred by the shareholder to a third party, first applied in satisfaction of the debt. The application was denied upon the ground that the second mortgagee of the mortgaged premises had no higher equity than the purchaser of the shares. The claim in that case and in this was precisely the same. The difference in the two cases consists in this, that there the application was resisted by a purchaser of the shares, here the objection is raised by execution creditors having a levy upon the shares.
What interest, legal or equitable, have the creditors acquired by virtue of the levy? The shares of all joint stock companies incorporated under the laws of this state are liable to be taken and sold under execution in the same manner as goods and chattels. Nix. Dig. 268, § 7.
The levy was made in compliance with the requirements of the statute. It is true that a chattel mortgage, after forfeiture, in the hands of the mortgagee is not liable to be taken and sold on execution at law against the mortgagor on the ground that the legal ownership is in the mortgagee. But the company is not the mortgagee of this stock. There is, it is shown, a formal transfer of the shares to the association as collateral security for the repayment of the loans. But the shareholder is not deprived of his title to the stock. He still continues to be a member of the association with all the rights of membership. He is by the constitution regarded as a stockholder. As such he is reqhired to pay his monthly instalment on each share. He may vote, act as a director, or other officer, and in fact do every act which a stockholder may do except transfer the title to his shares. ■Even that he may do subject to the lien of the association. The transfer of the shares to the association is in the nature of a pledge rather than of a chattel mortgage. The shares remain the property of the shareholder for every purpose excepting that of defeating the lien of the association. The .shareholders may exercise every other control over them. The principle is applied wherever a stockholder pledges his *227 stock to the corporation of which he is a member. He retains his rights of membership. Angello & A. on Corp., § 132.
It is true that, by the strict rules of the common law, a pledge could not be taken on execution in the hands of the pledgee. Neither could an equity of redemption in land, nor goods 'which had been leased or levied upon by a prior exer cution, nor bank notes nor stocks be levied upon, in regard to which the strictness of the ancient rule has been greatly relaxed by judicial decisions and by statute. I doubt exceedingly whether the doctrine is applicable to the peculiar character of this pledge. But admitting it to bo so, the doctrine was designed to operate in favor of the pledgee. His interest, it is admitted, cannot be disturbed by the levy. But if the claim of the pledgee is satisfied the levy is good.
The books of practice very generally lay down the rule, that a pledge or pawn cannot be taken in execution without specifying whether the execution be against the party malcing the pledge or the party holding the pledge. How what is usually understood and meant by the rule is, that if the goods of A. be pledged to B. they cannot be taken in execution against B. The rule is thus clearly stated by Mr. Archbold: “ The sheriff cannot sell goods which are pawned or gaged for a debt with the defendant, nor goods demised or let to him for years.” 1 Arch. Brae-. 268.
But it is not meant that if the goods of A. are pledged to B. they may not be taken in execution against A. subject to B’s lien. Some of the cases undoubtedly go thus far, and upon the technical idea that the sheriff cannot disturb B’s possession. It is not claimed that he can, but that he may sell with .B’s assent or upon the satisfaction of B’s claim. Why should it not be so ? A. a defendant in execution, has a horse worth $300, or bank stock worth $3000, which he pledges to B. for a debt of $60 — will that protect the property from the lien of the execution at law and drive the party into equity ? Or if he have a lease of real estate for ten years, and underrent for one, will that defeat a levy for the *228 residue of the term ? Will not the levy he good subject to the right of the undertenant ?
The right to make such levy has long been recognised. In an ancient treatise, the Law of Executions, p. 200, (I cite from the edition of 1706) it is said that “ goods gaged cannot be taken in execution from the party who hath them in pledge without payment of the money.”
But, subject to the right of the pawnee or lessee, the goods pawned or leased by the defendant may, it seems, be taken in execution. Bro. Ab., Pledges, pl. 24; Ibid., Execution, pl. 107.
The principle is very clearly stated by Mr. Marryatt, as counsel in argument in Scott v. Scholey, 8 East 476 : “ Goods pawned may be taken in execution against the pawnee in satisfaction of the pledge. And though it be said, that in the case of a lease of land, and of a stock of cattle for a year, they cannot be taken in execution during the term, that is because the lessor himself could not have dispossessed the tenant during the year, and of course the lessor’s. creditor cannot. But subject to the right of the pawnee in the one case, and of the lessee in the other, the goods may be taken.”
The distinction thus stated is recognised by Mr. Sewell in his Law of Sheriff 242.
Here the pledgees do not object to the levy. They give to the sheriff, as required by statute, a certificate of the number of shares owned by the pledgor. They admit, by their bill, the levy and the right of the plaintiffs in execution subject to the satisfaction of their own claim. If they so consent, can a third party object to the levy ? I think not.
But however this may be, and I do not deem it necessary for the purposes of this case to decide the point, the claim of the execution creditor is good in equity. Such levies upon property to which the defendant in execution has no legal title are constantly recognised in equity where the plaintiff in execution comes into this court for equitable relief. The defendant is asking for equitable relief at the hands of the court against the claim of the execution creditor. He has *229 no title, legal or equitable, to the property levied on. He only asks that the assets be marshalled as a peculiar exercise of equity jurisdiction. There was no transfer by Conover, or agreement to transfer the shares to Herbert. On the contrary, the evidence shows clearly that he relied upon a parol promise by Conover to pay his dues to the association in relief of the mortgaged premises. That promise was violated. His violation of the promise creates no equity in favor of the mortgagee against the execution creditor. The application to marshal the assets must be denied.
The complainants are entitled to the relief prayed for. There must be a reference to a master to take an account.